RECEIVED
USDC, WESTERN DISTRICT OF LA
ROBERT H. SHEMWELL, CLERK
DATE _11 , 2 , 07_
6b

## IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| UNITED STATES OF AMERICA, )<br><br>Plaintiff, )<br><br>v. )<br><br>THE MERIDIAN RESOURCE )<br>& EXPLORATION LLC )<br><br>and )<br><br>LOUISIANA ONSHORE )<br>PROPERTIES LLC, )<br><br>Defendants. ) | **6:07-CV-1482**  **LO** |

## CONSENT DECREE

Plaintiff, the United States of America, on behalf of the United States Environmental

Protection Agency ("EPA"), has filed a Complaint in this action concurrently with this Consent

Decree against Defendants, The Meridian Resource & Exploration LLC and Louisiana Onshore

Properties LLC (collectively, "Meridian"). The Complaint alleges that Defendants are civilly

liable for violations of the Clean Water Act ("CWA" or "the Act"), 33 U.S.C. § 1251 et seq., as

amended by the Oil Pollution Act of 1990 ("OPA"), 33 U.S.C. § 2701 et seq. The Complaint

seeks civil penalties and injunctive relief for five unauthorized discharges of crude oil into

navigable waters of the United States or adjoining shorelines from Meridian's operations at the

Weeks Island field in Iberia Parish, Louisiana. In particular, the Complaint alleges that

approximately 747 barrels of crude oil were discharged from two pipelines and an oil well

owned by Louisiana Onshore Properties LLC and operated by The Meridian Resource &
Exploration LLC.  The Discharges occurred between approximately November 2005 and
November 1, 2006.

Meridian represents that it has taken the following steps to decrease the likelihood of
other such discharges from Meridian's 6-inch pipeline ("Stone-Exxon Line") running from the
"Stone production facility" on the western barrier of the Intracoastal Waterway to Meridian's
Weeks Island "Exxon tank," from which three of the five Discharges occurred:

(a)     Replaced nearly all of the Stone-Exxon Line (in December 2006);

(b)     Hydrostatically tested the section of the Stone-Exxon Line that crosses
        under the Intracoastal Waterway, which is the portion of the pipeline that
        was not replaced, and did not detect a leak or other observed failure at 1 ½
        times operating pressure (in December 2006);

(c)     Added corrosion inhibitor treatment to the replacement pipeline
        comprising the Stone-Exxon Line to inhibit internal corrosion (in April
        2007);

(d)     Added corrosion coupons to the replacement pipeline comprising the
        Stone-Exxon Line to monitor internal corrosion (in April 2007).

Defendants do not admit any liability to the United States arising out of the transactions or
occurrences alleged in the Complaint.

The Parties recognize, and the Court by entering this Consent Decree finds, that this
Consent Decree has been negotiated by the Parties in good faith and will avoid litigation
between the Parties, and that this Consent Decree is fair, reasonable, and in the public interest.

2

NOW, THEREFORE, before taking testimony and without adjudication or admission of any issue of fact or law except as provided in Section I, below, and with the consent of the Parties, IT IS HEREBY ADJUDGED, ORDERED, AND DECREED as follows:

## I. JURISDICTION AND VENUE

1.      This Court has jurisdiction over the subject matter of the United States' claims in this action pursuant to 28 U.S.C. §§ 1331, 1345, and 1355, and Sections 309(b), 311(b)(7)(E) and (n) of the CWA, 33 U.S.C. §§ 1319(b), 1321(b)(7)(E) and (n). The Court has personal jurisdiction over the Parties to this Consent Decree. Venue lies in this District pursuant to 28 U.S.C. §§ 1391 and 1395 because the claim arose in the district and Defendants are located, reside, and do business in this District. For purposes of this Decree, or any action to enforce this Decree, Defendants consent to the Court's jurisdiction over this Decree or such action and over Defendants, and consent to venue in this judicial district.

2.      Notice of the commencement of this action has been given to the State of Louisiana, as required by Section 309(b) of the CWA, 33 U.S.C. § 1319(b).

## II. APPLICABILITY

3.      The obligations of this Consent Decree apply to and are binding upon the United States and upon Defendants and any successors, assigns, or other entities or persons otherwise bound by law.

4.      No transfer of ownership or operation of the Facility, whether in compliance with the procedures of this Paragraph or otherwise, shall relieve Defendants of their obligation to ensure that the terms of the Decree are implemented. At least thirty (30) Days prior to such transfer, Defendants shall provide a copy of this Consent Decree to the proposed transferee and

3

shall simultaneously provide written notice of the prospective transfer, together with a copy of

the proposed written agreement, to EPA Region 6 and to the United States Department of Justice

in accordance with Section XII of this Decree (Notices). Any transfer of ownership or operation

of the Facility without complying with this Paragraph constitutes a violation of this Consent

Decree.

     5.     Defendants shall condition any contract to perform work under this Consent

Decree upon performance of the work in conformity with the terms of this Consent Decree.

     6.     In any action to enforce this Consent Decree, Defendants shall not raise as a

defense the failure by any of its officers, directors, employees, agents, or contractors to take any

actions necessary to comply with the provisions of this Consent Decree.

### III. DEFINITIONS

     7.     Terms used in this Consent Decree that are defined in the CWA, or in regulations

promulgated thereunder, shall have the meanings assigned to them in the Act or such regulations,

unless otherwise provided in this Decree. Whenever the terms set forth below are used in this

Consent Decree, the following definitions shall apply:

     a.     "Complaint" shall mean the complaint filed by the United States in this

action.

     b.     "Consent Decree" or "Decree" shall mean this document.

     c.     "Day" shall mean a calendar day unless expressly stated to be a working

day. In computing any period of time under this Consent Decree, where the last day would fall

on a Saturday, Sunday, or federal holiday, the period shall run until the close of business of the

next working day.

   d.  "Defendants" shall mean The Meridian Resource & Exploration LLC and Louisiana Onshore Properties LLC.

   e.  "Discharges" shall mean the crude oil discharge discovered on November 9, 2005 (Spill No. 1, NRC # 778963), the crude oil discharge discovered on March 6, 2006 (Spill No. 2; NRC # 790005), the crude oil discharge discovered on March 17, 2006 (Spill No. 3; NRC # 791170), the crude oil discharge discovered on October 17, 2006 (Spill No. 4; NRC # 815140), and the crude oil discharge discovered on November 1, 2006 (Spill No. 5; NRC # 816744).

   f.  "Effective Date" shall have the definition provided in Section XIII.

   g.  "EPA" shall mean the United States Environmental Protection Agency and any of its successor departments or agencies.

   h.  "Facility" shall mean Meridian's equipment, facilities, or other infrastructure at the Weeks Island field located in Iberia Parish, Louisiana.

   i.  "Paragraph" shall mean a portion of this Decree identified by an Arabic numeral.

   j.  "Parties" shall mean the United States, The Meridian Resource & Exploration LLC, and Louisiana Onshore Properties LLC.

   k.  "Plaintiff" shall mean the United States.

   l.  "Section" shall mean a portion of this Decree identified by a Roman numeral.

   m.  "State" shall mean the State of Louisiana.

   n.  "United States" shall mean the United States of America, acting on behalf of EPA.

## IV. CIVIL PENALTY

8.      Within thirty (30) Days after the Effective Date of this Consent Decree, Defendants shall pay the sum of $504,000, plus interest, as a civil penalty. Interest shall accrue from the date on which this Decree is lodged with the Court, at the rate specified in 28 U.S.C. § 1961, as of the date of lodging.

9.      Defendants shall pay the civil penalty due by FedWire Electronic Funds Transfer ("EFT") to the U.S. Department of Justice in accordance with written instructions to be provided to Defendants, following lodging of the Consent Decree, by the Financial Litigation Unit of the U.S. Attorney's Office for the Western District of Louisiana, 300 Fannin Street, Suite 3201, Shreveport, Louisiana 71101 (318 676-3600). Such monies are to be deposited in the Oil Spill Liability Trust Fund. The payment shall reference the Civil Action Number assigned to this case and DOJ Number 90-5-1-1-08993 and shall specify that the payment is made toward CWA civil penalties to be deposited into the Oil Spill Liability Trust Fund pursuant to 33 U.S.C. § 1321(s) and 26 U.S.C. § 9509(b)(8).

10.      At the time of payment, Defendants shall send a copy of the EFT authorization form and the EFT transaction record, together with a transmittal letter, which shall state that the payment is for the civil penalty owed pursuant to the Consent Decree in this case, and shall reference the Civil Action Number assigned to this case and DOJ Number 90-5-1-1-08993, to the United States in accordance with Section XII of this Decree (Notices) and to:

> Stephen C. Ewart
> National Pollution Funds Center
> 4200 Wilson Boulevard, Suite 1000
> Arlington, Virginia  22203-1804

6

Commander
United States Coast Guard
Office of Claims and Litigation
2100 Second Street, S.W.
Washington, D.C. 20593-0001

11.    Defendants shall not deduct the civil penalty paid under this Section in calculating

federal income tax.

## V. **INJUNCTIVE RELIEF**

12.    Pipeline Survey –

A.    As soon as practicable but no later than sixty (60) Days after entry of this

Consent Decree, Meridian shall complete a written inventory of the

pipelines it operates at the Weeks Island field and prepare a site diagram

depicting the locations of the pipelines.  The written inventory shall

identify the diameter, length, age, and current condition of each line.

Meridian shall maintain and update the inventory as operations change.

B.    Meridian shall submit the written inventory and site diagram as part of its

first quarterly report, in accordance with Section VI (Reporting

Requirements) and Section XII (Notices) of this Consent Decree.

13.    Pipeline Monitoring –

A.    Visual Inspection and Testing Program: Active lines or portions of lines

operated by Meridian that are located on land and accessible by foot shall

be walked daily by Meridian, weather conditions permitting, and visually

inspected for signs of leaks, corrosion, or disrepair.  Active lines operated

by Meridian located in or adjacent to open waterways shall be visually

inspected daily by Meridian, weather conditions permitting, by boat for signs of leaks, corrosion, or disrepair. The Parties acknowledge that certain segments of active pipelines operated by Meridian located in heavily vegetated marshland may not be observable by foot or boat. Upon entry of this Consent Decree, those sections not observable by foot or boat, including under water crossings, shall be hydrostatically tested pursuant to industry standards by Meridian at least annually. A record of visual inspections and hydrostatic tests shall be maintained by Meridian.

For any future unauthorized discharge at the Facility, Meridian shall perform a root cause investigation to determine the primary cause(s) of the discharge and take appropriate action to prevent similar events. Within ninety (90) Days of any future unauthorized discharge, Meridian shall record and maintain documentation of the results of its root cause investigations.

B.    Corrosion Protection Program: As soon as practicable but no later than sixty (60) Days after entry of this Consent Decree, Meridian shall:

1.    Add corrosion inhibitor treatments accepted in the industry to the Stone-Exxon Line and any other active pipeline Meridian operates at the Weeks Island field for which the chemical composition of the product transported indicates the likelihood of a corrosive condition, as determined by a qualified third party tester, to inhibit

8

internal corrosion. A record of treatments shall be maintained by Meridian.

2.      Install and maintain corrosion coupons in active pipelines in which corrosion inhibitor is used to monitor internal corrosion. Coupon condition shall be evaluated monthly and a record maintained by Meridian.

3.      Install and maintain cathodic protection accepted in the industry on each active pipeline Meridian operates at the Weeks Island field to protect against external corrosion. Cathodic protection shall be monitored and visually inspected at least monthly. A record of monitoring and inspection shall be maintained by Meridian.

4.      Either equip all producing wells with an industry standard pressure safety device or conduct hydrostatic testing to industry standards on each pipeline servicing a producing well annually to assess pipeline integrity. A record of testing shall be maintained by Meridian.

C.      Volume Tracking Program: As soon as practicable but no later than one hundred and twenty (120) Days after entry of this Consent Decree, Meridian shall install and maintain one or more industry standard check meters (for a total of at least two meters) on the Stone-Exxon Line to monitor in-out flow volumes. Meter readings shall be recorded on a daily basis and reconciled at least every two weeks. A record of the daily

9

readings and the reconciliations shall be maintained by Meridian.

14.     Independent Evaluation of Prevention and Protections Measures –

A.     Meridian shall retain an independent consultant ("Consultant") to evaluate the measures undertaken by Meridian pursuant to this Consent Decree and Meridian's other spill prevention and control measures. The Consultant shall prepare a written report of its evaluation including, if warranted, any proposed additional or alternative measures ("Additional Measures") that may be implemented to prevent or minimize the impact of future unauthorized discharges from Meridian's pipelines. Meridian shall review the Consultant's report to determine whether any Additional Measures should be implemented.

B.     Within nine (9) months of entry of this Consent Decree, Meridian shall submit a copy of the Consultant's final report in accordance with Section VI (Reporting Requirements) and Section XII (Notices) of this Consent Decree. Along with the Consultant's final report, Meridian shall submit a letter indicating which Additional Measures, if any, Meridian has adopted and providing the reason or reasons why Additional Measures proposed but not adopted were rejected.

15.     Reports –

A.     For two (2) years following entry of this Consent Decree, Meridian shall submit reports documenting maintenance and monitoring activities and its actions under this Consent Decree on a quarterly basis during the first year

and semi-annually during the second year. These reports shall describe the steps taken to comply with this Consent Decree and identify any non-compliance with this Consent Decree, any unauthorized discharges, and results of any hydrostatic tests conducted during the reporting period. These reports shall be submitted in accordance with Section VI (Reporting Requirements) and Section XII (Notices) of this Consent Decree.

## VI.  REPORTING REQUIREMENTS

16.     Defendants shall submit all reports and required written submissions described in this Consent Decree in accordance with Section XII (Notices) of this Decree.

17.     Each report submitted by Defendants under this Section shall be signed by an official of the submitting party and include the following certification:

> I certify under penalty of law that this document and all attachments were prepared under my direction or supervision in accordance with a system designed to assure that qualified personnel properly gather and evaluate the information submitted. Based on my inquiry of the person or persons who manage the system, or those persons directly responsible for gathering the information, the information submitted is, to the best of my knowledge and belief, true, accurate, and complete. I am aware that there are significant penalties for submitting false information, including the possibility of fine and imprisonment for knowing violations.

18.     Defendants shall retain all underlying documents from which they have compiled any report or other submission required by Section V (Injunctive Relief) of this Consent Decree until at least three years after termination of this Decree.

19.     The reporting requirements of this Consent Decree do not relieve Defendants of any reporting obligations required by the CWA, or implementing regulations, or by any other federal, state, or local law, regulation, or requirement.

20.     Any information provided pursuant to this Consent Decree may be used by the

United States in any proceeding to enforce the provisions of this Decree and as otherwise permitted by law.

## VII.  STIPULATED PENALTIES

21.     If Defendants fail to pay the civil penalty and interest required under Section IV (Civil Penalty) when due, Defendants shall pay to the United States a stipulated penalty of fifteen hundred dollars ($1,500) per Day for each Day that the payment is late.  Late payment of the civil penalty shall be made in accordance with payment instructions in Section IV (Civil Penalty) above.  Stipulated penalties shall be paid in accordance with Paragraph 27, below.  All transmittal correspondence shall state that any such payment is for late payment of the civil penalty due under this Consent Decree or for stipulated penalties for late payment of the civil penalty, as applicable.  Payments of stipulated penalties shall reference the Civil Action Number assigned to this case and DOJ Number 90-5-1-1-08993 and shall specify that the payments are for stipulated penalties to be deposited into the United States Treasury pursuant to 31 U.S.C. § 3302.

22.     Defendants shall be liable for stipulated penalties to the United States for all other violations of this Consent Decree, unless excused under Section VIII (Force Majeure).  A violation includes failing to perform any obligation required by the terms of this Consent Decree, including any obligations under Sections V or VI, according to all applicable requirements of this Decree and within the specified time schedules established by or approved under this Decree.

| Penalty Per Violation Per Day: | Period of Noncompliance: |
|---|---|
| $500 | 1st through 14th day |

12

$1,000                                    15th through 30th day

$1,500                                    31st day and beyond

23.     Stipulated penalties under this Section shall begin to accrue on the Day after performance is due and shall continue to accrue until performance is satisfactorily completed. Stipulated penalties shall accrue simultaneously for separate violations of this Consent Decree.

24.     Defendants shall pay any stipulated penalty within thirty (30) Days of receiving a written demand.

25.     The United States may, in the unreviewable exercise of its discretion, reduce or waive stipulated penalties otherwise due under this Consent Decree.

26.     Stipulated penalties shall continue to accrue as provided in Paragraphs 21-22, above, during any Dispute Resolution, with interest on accrued penalties payable and calculated at the rate provided for in 28 U.S.C. § 1961, but need not be paid until the following:

        a.     If the dispute is resolved by agreement or by a decision of the United States that is not appealed to the Court, Defendants shall pay accrued penalties determined to be owing, together with interest, to the United States within thirty (30) Days of the effective date of that agreement or receipt of the United States' decision;

        b.     If the dispute is submitted to the Court and the United States prevails in whole or in part, Defendants shall pay all accrued penalties determined by the Court to be owing, together with interest, within sixty (60) Days of receiving the Court's decision or order, except as provided in subparagraph c, below;

        c.     If any Party appeals the District Court's decision, Defendants shall pay all accrued penalties determined to be owing, together with interest, within fifteen (15) Days of

13

receiving the final appellate court decision.

27.     Defendants shall pay stipulated penalties owing to the United States in the manner set forth and with the confirmation notices required by Paragraphs 9-10, above, except that such monies can be paid by EFT or by certified or cashier's check in the amount due, payable to the U.S. Department of Justice for deposit in the U.S. Treasury, and that the transmittal letter shall state that the payment is for stipulated penalties and shall state for which violation(s) the penalties are being paid.

28.     Defendants shall not deduct stipulated penalties paid under this Section in calculating federal income tax.

29.     If Defendants fail to pay stipulated penalties according to the terms of this Consent Decree, Defendants shall be liable for interest on such penalties, as provided for in 28 U.S.C. § 1961, accruing as of the date payment became due.  Nothing in this Paragraph shall be construed to limit the United States from seeking any remedy otherwise provided by law for Defendants' failure to pay any stipulated penalties.

30.     Subject to the provisions of Section X of this Consent Decree (Effect of Settlement/Reservation of Rights), the stipulated penalties provided for in this Consent Decree shall be in addition to any other rights, remedies, or sanctions available to the United States for Defendants' violation of this Consent Decree or applicable law.

## VIII. FORCE MAJEURE

31.     "Force majeure," for purposes of this Consent Decree, is defined as any event arising from causes beyond the control of Defendants, of any entity controlled by Defendants, or of Defendants' contractors, that delays or prevents the performance of any obligation under this

Decree despite Defendants' best efforts to fulfill the obligation. The requirement that Defendants exercise "best efforts to fulfill the obligation" includes using best efforts to anticipate any potential force majeure event and best efforts to address the effects of any such event (a) as it is occurring and (b) after it has occurred to prevent or minimize any resulting delay to the greatest extent possible. "Force majeure" does not include any Defendant's financial inability to perform any obligation under this Consent Decree.

32.     If any event occurs or has occurred that may delay the performance of any obligation under this Consent Decree, whether or not caused by a force majeure event, Defendants shall provide notice orally or by electronic or facsimile transmission as soon as possible, but not later than seventy-two (72) hours after the time any Defendant first knew that the event might cause a delay. Within seven (7) Days thereafter, Defendants shall provide in writing, as provided in Section XII of this Consent Decree (Notices), an explanation and description of the reasons for the delay, all actions taken or to be taken to prevent or minimize the delay, a schedule for implementation of any measures to be taken to prevent or mitigate the delay or the effect of the delay, Defendants' rationale for attributing such delay to a force majeure event if it intends to assert such a claim, and a statement as to whether, in the opinion of Defendants, such event may cause or contribute to an endangerment to public health, welfare, or the environment. Defendants shall include with any notice all available documentation supporting the claim that the delay was attributable to a force majeure. Failure to comply with the above requirements shall preclude Defendants from asserting any claim of force majeure for that event for the period of time of such failure to comply, and for any additional delay caused by such failure. Defendants shall be deemed to know of any circumstance of which Defendants,

15

any entity controlled by Defendants, or Defendants' contractors knew or should have known.

33.     If the United States agrees that the delay or anticipated delay is attributable to a force majeure event, the time for performance of the obligations under this Consent Decree that are affected by the force majeure event will be extended by the United States for such time as is necessary to complete those obligations.  An extension of the time for performance of the obligations affected by the force majeure event shall not, of itself, extend the time for performance of any other obligation.  The United States will notify Defendants in writing of the length of the extension, if any, for performance of the obligations affected by the force majeure event.

34.     If the United States does not agree that the delay or anticipated delay has been or will be caused by a force majeure event, the United States will notify Defendants in writing of its decision.

35.     If Defendants elect to invoke the dispute resolution procedures set forth in Section IX of this Consent Decree, it shall do so no later than fifteen (15) Days after receipt of the United States' notice.  In any such proceeding, Defendants shall have the burden of demonstrating by a preponderance of the evidence that the delay or anticipated delay has been or will be caused by a force majeure event, that the duration of the delay or extension sought was or will be warranted under the circumstances, that best efforts were exercised to avoid and mitigate the effects of the delay, and that Defendant complied with the requirements of this Section.  If Defendants carry this burden, the delay at issue shall be deemed not to be a violation by Defendants of the affected obligation of this Consent Decree.

## IX. DISPUTE RESOLUTION

36.     Unless otherwise expressly provided for in this Consent Decree, the dispute resolution procedures of this Section shall be the exclusive mechanism to resolve disputes arising under or with respect to this Consent Decree.  Such procedures, however, shall not apply to actions by the United States to enforce obligations of Defendants under this Consent Decree that have not been disputed in accordance with this Section.

37.     Any dispute subject to dispute resolution under this Consent Decree shall first be the subject of informal negotiations between the United States and Defendants.  The dispute shall be considered to have arisen when Defendants send a written Notice of Dispute, as provided in Section XII of this Decree (Notices).  Such Notice of Dispute shall state clearly the matter in dispute.  The period of informal negotiations shall not exceed twenty (20) Days from the date the dispute arises, unless that period is modified by written agreement.  If informal negotiations are unsuccessful, then the position advanced by the United States shall be considered binding unless, within twenty (20) Days after the conclusion of the informal negotiation period, Defendants invoke formal dispute resolution procedures as set forth below.

38.     Defendants shall invoke formal dispute resolution procedures, within the time period provided in the preceding Paragraph, by serving on the United States a written Statement of Position regarding the matter in dispute.  The Statement of Position shall include, but need not be limited to, any factual data, analysis, or opinion supporting Defendants' position and any supporting documentation relied upon by Defendant.

39.     The United States shall serve its Statement of Position within forty-five (45) Days of receipt of Defendants' Statement of Position.  The United States' Statement of Position shall

17

include, but need not be limited to, any factual data, analysis, or opinion supporting that position and any supporting documentation relied upon by the United States. The United States' Statement of Position shall be binding on Defendant, unless Defendant files a motion for judicial review of the dispute in accordance with the following Paragraph.

40.     Defendants may seek judicial review of the dispute by filing with the Court and serving on the United States, in accordance with Section XII (Notices) of this Consent Decree, a motion requesting judicial resolution of the dispute. The motion must be filed within thirty (30) Days of receipt of the United States' Statement of Position pursuant to the preceding Paragraph. The motion shall contain a written statement of Defendants' position on the matter in dispute, including any supporting factual data, analysis, opinion, or documentation, and shall set forth the relief requested and any schedule within which the dispute must be resolved for orderly implementation of the Consent Decree.

41.     The United States shall respond to Defendants' motion within the time period allowed by the Local Rules of this Court. Defendants may file a reply memorandum, to the extent permitted by the Local Rules.

42.     Except as otherwise provided in this Consent Decree, in any dispute brought under Paragraph 38, Defendants shall bear the burden of demonstrating that their position complies with this Decree.

43.     The invocation of dispute resolution procedures under this Section shall not, by itself, extend, postpone, or affect in any way any obligation of Defendants under this Consent Decree, unless and until final resolution of the dispute so provides. Stipulated penalties with respect to the disputed matter shall continue to accrue from the first Day of noncompliance, but

18

payment shall be stayed pending resolution of the dispute as provided in Paragraph 26. If Defendants do not prevail on the disputed issue, stipulated penalties shall be assessed and paid as provided in Section VII (Stipulated Penalties).

## X. EFFECT OF SETTLEMENT/RESERVATION OF RIGHTS

44.     This Consent Decree resolves the civil claims of the United States for the violations alleged in the Complaint filed in this action through the date of lodging.

45.     The United States reserves all legal and equitable remedies available to enforce the provisions of this Consent Decree, except as expressly stated in the preceding Paragraph. This Consent Decree shall not be construed to limit the rights of the United States to obtain penalties or injunctive relief under the CWA or implementing regulations, or under other federal laws, regulations, or permit conditions, except as expressly specified in the preceding Paragraph.

46.     In any subsequent administrative or judicial proceeding initiated by the United States for injunctive relief, civil penalties, other appropriate relief relating to the Facility, Defendants shall not assert, and may not maintain, any defense or claim based upon the principles of waiver, res judicata, collateral estoppel, issue preclusion, claim preclusion, claim-splitting, or other defenses based upon any contention that the claims raised by the United States in the subsequent proceeding were or should have been brought in the instant case, except with respect to claims that have been specifically resolved pursuant to Paragraph 44 of this Section.

47.     This Consent Decree is not a permit, or a modification of any permit, under any federal, State, or local laws or regulations. Defendants are responsible for achieving and maintaining complete compliance with all applicable federal, State, and local laws, regulations, orders, and permits. Defendants' compliance with this Consent Decree shall be no defense to

any action commenced pursuant to said laws, regulations, orders, or permits, except as set forth herein. The United States does not, by its consent to the entry of this Decree, warrant or aver in any manner that Defendants' compliance with any aspect of this Consent Decree will result in compliance with provisions of the CWA or with any other provisions of federal, State, or local laws, regulations, orders, or permits.

48. This Consent Decree does not limit or affect the rights of Defendants or of the United States against any third parties that are not party to this Consent Decree, nor does it limit the rights of third parties that are not party to this Consent Decree against Defendants, except as otherwise provided by law.

49. This Consent Decree shall not be construed to create rights in, or grant any cause of action to, any third party not party to this Consent Decree.

50. Defendants hereby covenant not to sue and agree not to assert any claims related to the Discharges, or response activities in connection with the Discharges, against the United States pursuant to the CWA, OPA, or any other federal law, State law, or regulation including, but not limited to, any direct or indirect claim for reimbursement from the Oil Spill Liability Trust Fund, or pursuant to any other provision of law.

## XI.  COSTS

51. The Parties shall bear their own costs of this action, including attorneys' fees, except the United States shall be entitled to collect costs (including attorneys' fees) incurred in any action necessary to enforce this Consent Decree.

## XII.  NOTICES

52. Unless otherwise specified herein, whenever notifications, submissions, reports or

communications are required by this Consent Decree, they shall be made in writing and

addressed to all parties as follows:

<u>As to the United States</u>:

> As to the U.S. Department of Justice:
> Chief (re: DJ # 90-5-1-1-08993)
> Environmental Enforcement Section
> Environment and Natural Resources Division
> U.S. Department of Justice
> P.O. Box 7611
> Washington, D.C.  20044-7611
> (202) 514-0097 (facsimile)

> As to EPA Region 6:
> OPA Enforcement Coordinator
> U.S. Environmental Protection Agency, Region 6
> 1445 Ross Avenue, Suite 1200, 6SF-PC
> Dallas, Texas  75202-2733
> (214) 665-7447 (facsimile)

> Edwin Quinones
> Assistant Regional Counsel
> U.S. Environmental Protection Agency, Region 6
> 1445 Ross Avenue, Suite 1200, 6RC-S
> Dallas, Texas  75202-2733
> (214) 665-8035 (telephone)
> (214) 665-6460 (facsimile)
> quinones.edwin@epa.gov

<u>As to Defendants</u>:

> Dale Breaux
> Vice President, Operations
> The Meridian Resource & Exploration LLC
> 1401 Enclave Parkway, Suite 300
> Houston, Texas 77077
> (281) 597-7163 (telephone)
> (281) 558-8118 (facsimile)
> dbreaux@tmrx.com

21

Michael Mayell
Louisiana Onshore Properties LLC
1401 Enclave Parkway, Suite 300
Houston, Texas 77077
(281) 597-7015 (telephone)
(281) 558-5595 (facsimile)
mmayell@tmrx.com

53.    Any Party may, by written notice to the other Parties, change its designated notice

recipient or notice address provided above.

54.    Notices submitted pursuant to this Section shall be deemed submitted upon

mailing, unless otherwise provided in this Consent Decree or by mutual agreement of the Parties

in writing.

## XIII. **EFFECTIVE DATE**

55.    The Effective Date of this Consent Decree shall be the date upon which this

Consent Decree is entered by the Court or a motion to enter the Consent Decree is granted,

whichever occurs first, as recorded on the Court's docket.

## XIV. **RETENTION OF JURISDICTION**

56.    The Court shall retain jurisdiction over this case until termination of this Consent

Decree, for the purpose of resolving disputes arising under this Decree or entering orders

modifying this Decree, pursuant to Sections IX (Dispute Resolution) and XV (Modification), or

effectuating or enforcing compliance with the terms of this Decree.

## XV. **MODIFICATION**

57.    The terms of this Consent Decree may be modified only by a subsequent written

agreement signed by all the Parties.  Where the modification constitutes a material change to any

term of this Decree, it shall be effective only upon approval by the Court.

58.     Any disputes concerning modification of this Consent Decree shall be resolved pursuant to Section IX of this Decree (Dispute Resolution), provided, however, that, instead of the burden of proof provided by Paragraph 42, the Party seeking the modification bears the burden of demonstrating that it is entitled to the requested modification in accordance with Federal Rules of Civil Procedure 60(b).

## XVI. TERMINATION

59.     After the second anniversary of the Effective Date and after Defendants have completed performance of their obligations required by this Consent Decree, including payment under Section IV (Civil Penalty) of this Decree and any accrued stipulated penalties under Section VI, performance of Injunctive Relief under Section V, and Reporting under Section VI, Defendants may serve upon the United States a written Request for Termination, stating that Defendants have satisfied those requirements, together with all necessary supporting documentation.

60.     Following receipt by the United States of Defendants' Request for Termination, the Parties shall confer informally concerning the Request and any disagreement that the Parties may have as to whether Defendants have satisfactorily complied with the requirements for termination of this Consent Decree. If the United States agrees that the Decree may be terminated, the United States shall file, for the Court's approval, a joint stipulation terminating the Decree.

61.     If the United States does not agree that the Consent Decree may be terminated, the Defendants may invoke Dispute Resolution under Section IX of this Decree. Defendants, however, shall not seek Dispute Resolution of any dispute until ninety (90) Days after service of

23

its Request for Termination.

## XVII. **PUBLIC PARTICIPATION**

62.    This Consent Decree shall be lodged with the Court for a period of not less than

thirty (30) Days for public notice and comment, consistent with the procedures set forth in 28

C.F.R. § 50.7. The United States reserves the right to withdraw or withhold its consent if the

comments regarding the Consent Decree disclose facts or considerations indicating that the

Consent Decree is inappropriate, improper, or inadequate.  Defendants agree not to oppose entry

of this Consent Decree by the Court or to challenge any provision of the Decree, unless the

United States has notified Defendants in writing that it no longer supports entry of the Decree.

Defendants consent to entry of this Consent Decree without further notice.

## XVIII. **SIGNATORIES/SERVICE**

63.    The Acting Assistant Attorney General, Environment and Natural Resources

Division, United States Department of Justice, on behalf of the United States and each

undersigned representative of Defendants certify that he or she is fully authorized to enter into

the terms and conditions of this Consent Decree and to execute and legally bind the Party he or

she represents to the terms of this Decree.

64.    This Consent Decree may be signed in counterparts, and such counterpart

signature pages shall be given full force and effect.

65.    Defendants agree to accept service of process by mail with respect to all matters

arising under or relating to this Consent Decree and to waive the formal service requirements set

forth in Rules 4 and 5 of the Federal Rules of Civil Procedure and any applicable Local Rules of

this Court including, but not limited to, service of a summons.

## XIX. INTEGRATION

66.     This Consent Decree constitutes the final, complete, and exclusive agreement and understanding among the Parties with respect to the settlement embodied in the Decree and supersedes all prior agreements and understandings, whether oral or written, concerning the settlement embodied herein.  No other document, nor any representation, inducement, agreement, understanding, or promise, constitutes any part of this Decree or the settlement it represents, nor shall it be used in construing the terms of this Decree.

## XX. FINAL JUDGMENT

67.     Upon approval and entry of this Consent Decree by the Court, this Consent Decree shall constitute a final judgment of the Court as to the United States and Defendants.

This Consent Decree is dated and entered this ____ day of _____, 2007.

_____
UNITED STATES DISTRICT JUDGE
Western District of Louisiana

25

Signature Page to Consent Decree in US v. The Meridian Resource & Exploration LLC et al.

**FOR PLAINTIFF UNITED STATES OF AMERICA:**

RONALD J. TENPAS
Acting Assistant Attorney General
United States Department of Justice
Environment and Natural Resources Division

JASON T. BARBEAU
Trial Attorney
Environmental Enforcement Section
Environment and Natural Resources Division
U.S. Department of Justice
P.O. Box 7611, Ben Franklin Station
Washington, D.C. 20044

26

Signature Page to Consent Decree in US v. The Meridian Resource & Exploration LLC et al.
FOR PLAINTIFF UNITED STATES OF AMERICA (continued):


DONALD W. WASHINGTON
United States Attorney


KAREN I. KING  4/23/08
Assistant U.S. Attorney
United States Attorney's Office
Western District of Louisiana
800 Lafayette Street, Suite 2200
Lafayette, LA 70501-6832


27

Signature Page to Consent Decree in US v. The Meridian Resource & Exploration LLC et al.

**FOR PLAINTIFF UNITED STATES OF AMERICA (continued):**


RICHARD E. GREENE
Regional Administrator
U.S. Environmental Protection Agency, Region 6
1445 Ross Avenue
Dallas, Texas 75202-2733


EDWIN QUINONES
Assistant Regional Counsel
U.S. Environmental Protection Agency, Region 6
1445 Ross Avenue, Suite 1200, 6RC-S
Dallas, Texas 75202-2733

28

Signature Page to Consent Decree in US v. The Meridian Resource & Exploration LLC et al.
**FOR PLAINTIFF UNITED STATES OF AMERICA (continued):**

GRANTA Y. NAKAYAMA
Assistant Administrator
Office of Enforcement and Compliance Assurance
U.S. Environmental Protection Agency
Ariel Rios Building, 2201A
1200 Pennsylvania Ave., N.W.
Washington, D.C. 20460

KELLY K. BRANTNER
Office of Civil Enforcement
Water Enforcement Division
U.S. Environmental Protection Agency
Mail Code 2243A
1200 Pennsylvania Ave., N.W.
Washington, D.C. 20460

29

Signature Page to Consent Decree in US v. The Meridian Resource & Exploration LLC et al.

**FOR DEFENDANTS:**

**THE MERIDIAN RESOURCE & EXPLORATION LLC**

By: _____

Name:  Michael J. Mayell
Title:  President
The Meridian Resource & Exploration LLC
1401 Enclave Parkway, Suite 300
Houston, Texas 77077

**LOUISIANA ONSHORE PROPERTIES LLC**

By: _____

Name:  Michael J. Mayell
Title:  President
Louisiana Onshore Properties LLC
1401 Enclave Parkway, Suite 300
Houston, Texas 77077

By: _____

Lori Warner, as counsel to The Meridian Resource & Exploration
and Louisiana Onshore Properties
Adams and Reese, LLP
1221 McKinney, Suite 4400
Houston, Texas 77010